UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE WASHINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>P. ROUCH, et al.,<br><br>    Defendants. | Case No.: 1:15-cv-00725-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Doc. No. 35)<br><br>**FOURTEEN (14) DAY DEADLINE** |

## I. Introduction

Plaintiff Jesse Washington is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs against Defendants Rouch and Sisodia. Plaintiff claims that, in November 2013, Defendant Rouch wrongfully rescinded a medically-necessary chrono for orthopedic shoes, causing him to endure foot pain for several months. Plaintiff further claims that Defendant Sisodia failed to renew the chrono upon a medical examination in February 2014. Both allegedly ignored Plaintiff's complaints of chronic pain. Plaintiff was later issued the orthopedic shoes in April 2015. (Doc. No. 13.)

Currently before the Court is Defendants' motion for summary judgment, filed on January 5, 2018. (Doc. No. 35.) Plaintiff filed an opposition on extension on March 2, 2018, (Doc. No. 39), and

Defendants filed a reply to the opposition on March 9, 2018, (Doc. No. 41.) The motion is deemed submitted. Local Rule 230(l).

## II.  Motion for Summary Judgment

### A.  Legal Standards

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id*.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In cases where the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id*.; *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the

[nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

### B. Arguments

Defendants argue that the undisputed evidence shows that Plaintiff's foot condition was not a significant deformity, is usually treated only with arch support inserts, and did not meet the medical criteria for orthopedic shoes in this case. Therefore, Plaintiff's contention that he was wrongfully denied orthopedic shoes amounts to no more than a patient's disagreement with a health care provider's medical opinion, which cannot support an Eighth Amendment deliberate indifference claim. Defendants also argue that they are entitled to qualified immunity because they did not violate the Constitution. Therefore, Defendants assert that summary judgment should be granted in their favor.

Plaintiff argues in opposition that it is undisputed that other medical providers have issued to him a chrono for both orthopedic shoes and inserts, creating a material issue of fact as to whether a chrono for the shoes was medically required. Plaintiff argues that there is sufficient evidence showing that Defendants ignored his medical history, creating a triable issue as to whether Defendants' revocation and denial of the chrono for orthopedic shoes violated the Eighth Amendment. Plaintiff also argues that Defendants are not entitled to qualified immunity here.

In reply, Defendants argue that a previously-issued chrono for orthopedic shoes may be evidence of a different treatment decision by another health care provider made at another time, but is not sufficient to show deliberate indifference in this case. Further, different treatment decisions made at different times by different health care providers does not mean that Plaintiff's medical needs were ignored by Defendants here, as Plaintiff asserts. Rather, the undisputed evidence is that Plaintiff was provided medically acceptable care for his condition. Therefore, summary judgment is appropriate.

///

///

**C. Discussion**

**1. Legal Standards**

While the Eighth Amendment entitles an inmate to medical care, it is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122. "A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Wilhelm*, 680 F.3d at 1122-23 (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

In other words, so long as a defendant decides on a medically acceptable course of treatment, his actions will not be considered deliberately indifferent even if an alternative course of treatment was available. *Id*. In evaluating whether a medical provider's choice of care was medically acceptable, the inquiry is focused on whether the services are "at a level reasonably commensurate

4

with modern medical science and of a quality acceptable within prudent professional standards." *Morales Feliciano v. Rossello Gonzalez*, 13 F. Supp. 2d 151, 208 (D. Puerto Rico 1998) (quoting *U.S. v. DeCologero*, 821 F.2d 39, 43 (1st Cir. 1987)).

### 2. Undisputed Material Facts

It is undisputed that at the time of the events at issue in this litigation, Plaintiff had been diagnosed with pes planus, commonly known as "flat feet." (*See* Decl. of B. Feinberg, M.D. ("Feinberg Decl."), Doc. No. 35-4, ¶ 12.) Plaintiff asserts that he had been provided orthopedic shoes since 2000, when housed at a prior institution. (Decl. of Jesse Washington ("Pl.'s Decl."), ECF No. 39, ¶ 11.) Further, on several occasions, Plaintiff was issued medical chronos authorizing orthopedic shoes and shoe inserts. (*See id*. at ¶¶ 13, 16.)

On November 14, 2011, Plaintiff submitted a health care services request form requesting to be seen by an orthopedic specialist due to "the urgent need for orthopedic shoes re-evaluation and replacement. I am having difficulties with current orthopedic shoes. Last ordered January 2000." (Feinberg Decl. ¶17 & Ex. H.) In response, on December 30, 2011, Plaintiff was examined by Defendant Sisodia, a Physician's Assistant. (Feinberg Decl. ¶¶ 17-18.) Defendant Sisodia referred Plaintiff to podiatry based on a determination that there was a lack of enough medical evidence to continue with all chronos. (*Id*. at ¶ 18.) Defendant Sisodia's supervisor, Dr. Beregovskaya, denied the request for a referral to podiatry, noting that a podiatry consultation is not indicated for flat feet. (*Id*.)

On January 17, 2012, Dr. Kim examined Plaintiff and agreed with Dr. Beregovskaya, finding that a podiatry referral was unnecessary for Plaintiff's flat feet, as he would likely be recommended to use arch support insoles for his condition. (Feinberg Decl. ¶ 19.) On February 24, 2012, Defendant Rouch, a nurse practitioner, also did not renew Plaintiff's chrono for orthopedic shoes, based on the Dr. Kim's notes. (*Id*. at ¶ 20.) Plaintiff then submitted a health care services form seeking reconfirmation of all his chronos. (*Id*. at ¶ 21.)

On July 25, 2012, Plaintiff saw Dr. Aye, who documented only "mild bilateral flat feet" in his examination and noted "no acute issues" and "no major physical complaints/symptoms." Dr. Aye determined to leave Plaintiff only with arch supports. (Feinberg Decl. ¶ 22 & Ex. Q.)

///

By October 2012, Plaintiff had submitted a California Department of Corrections and Rehabilitation ("CDCR") 602 inmate appeal appealing the non-renewal of chronos for his orthopedic shoes. (Feinberg Decl. ¶ 23, Pl.'s Decl. ¶ 11.) According to Plaintiff, his shoes had worn-out soles. (Pl.'s Decl. ¶11.) Plaintiff also declares that he had several months of chronic foot pain. (*Id*. at ¶ 15.)

On October 12, 2012, Plaintiff saw his primary care provider, Dr. Clark, who wrote Plaintiff an accommodation chrono and a request for orthotics. (Feinberg Decl. ¶ 23; Pl.'s Decl. ¶¶ 12-13.) However, Dr. Beregovskaya denied Dr. Clark's orthotics referral on October 19, 2012, noting that "pes planus is not a criteria for orthotics" on the denial form. Dr. Beregovskaya approved Dr. Clark's chrono for orthopedic shoes with inserts. (Feinberg Decl. ¶¶ 24-25.)

Shortly thereafter, on November 16, 2012, Dr. Aye met with Plaintiff to inform him that the orthotics referral was denied, and noted that Plaintiff has flat feet, had inserts for arch support, and that Plaintiff wanted new orthopedic shoes. (*Id*. at ¶ 26.) Some months later, on June 7, 2013, Plaintiff saw Dr. Aye again, and explained that his orthopedic shoes were worn out and that he needed a new pair. (Feinberg Decl. ¶ 29.) Dr. Aye noted in his report that his examination showed Plaintiff's feet were unremarkable, and Dr. Clark's referral for the orthotics clinic had been denied because flat feet did not qualify for orthopedic shoes. (*Id*.) Dr. Aye also wrote that Plaintiff had no foot surgery in the post, and that he advised Plaintiff to continue with his current shows and orthotic inserts. (*Id*. & Ex. Z.)

Over the next several months, Plaintiff submitted health care requests and had discussions with his medical providers regarding his desire to be fitted for custom-fitted orthopedic shoes to be provided by an approved outside vendor. (*See* Feinberg Decl. ¶¶ 30-34; Pl.'s Decl. ¶¶ 15-16.) On January 15, 2013, Dr. Aye met with Plaintiff, and noted that he wanted orthopedic shoes and insoles because he was "born with flat feet" and that he was "given [shoes] by medical and he has them in his property." (Feinberg Decl. ¶ 28 & Ex. X.) Dr. Aye further wrote in his assessment that Plaintiff "[a]lready had orthotic shoes/insoles – will put on chrono" to reflect them. (*Id*.) This update to Plaintiff's accommodation chrono was approved by Dr. Beregovskaya. (*Id*.) Nevertheless, Plaintiff still complained of needing new shoes because his current pair were worn out. (Feinberg Decl. ¶¶ 29-31.)

On October 12, 2013, according to Plaintiff, he finally ordered orthopedic shoes from an outside vendor. (Pl.'s Decl. ¶ 16.) On November 4, 2013, Plaintiff submitted a health care services request form requesting expedited delivery of "special purchase medical shoes." (Feinberg Decl. ¶ 34 & Ex. FF; Pl.'s Decl. ¶ 17.)[1]

On November 18, 2013, Plaintiff was seen by Defendant Rouch, who informed Plaintiff that the existing chrono was set to be rescinded, and that although he had flat feet, he did not meet the criteria for the orthotics referral. (Feinberg Decl. ¶ 35 & Ex. GG; Pl.'s Decl. ¶ 17.) Defendant Rouch wrote in her progress notes that her examination showed no significant deformity of the bone structure of Plaintiff's feet, no swelling, and good pulses, and that his neurological condition was within normal limits. (Ex. GG.) She also wrote that Plaintiff became angry and told her that he wanted to order his own orthotic boots, and that he would file a 602 and a lawsuit. (*Id*.) Plaintiff agrees that he put Defendant Rouch on notice that he would file a grievance for a continuous disregard for his prescribed medical care for his foot pain; namely, the orthopedic shoes with customized orthopedic inserts. (Pl.'s Decl. ¶ 18.) Plaintiff also declares that after he informed Defendant Rouch that he had ordered custom shoes, she nevertheless rescinded his chrono. (*Id*. at ¶ 19.) Plaintiff also contends that Defendant Rouche threatened to generate a CDC 115 Rules Violation Report for acting aggressively towards her person during the medical interview.

Following this meeting, Defendant Rouch drafted the chrono rescinding Plaintiff's chrono for orthotic footwear, and Dr. Beregovskaya approved it on November 20, 2013. (Feinberg Decl. ¶ 35 & Ex. HH.) Defendant Rouche's rescission of Plaintiff's chrono arising from this incident is the basis for his claim against that defendant.

On November 21, 2013, Plaintiff was notified that orthopedic shoes he ordered were not an authorized medical appliance, and he had to return the shoes home at his own expense. (Pl.'s Decl. ¶¶ 22-23.) On December 20, 2013, Plaintiff submitted a CDCR 602 objecting to Defendant Rouch's

---

[1] The parties dispute whether Plaintiff was willing to buy his own shoes, or wanted the state to pay for the shoes. (*See* Feinberg Decl. ¶ 26 & Ex. U; Pl.'s Decl. ¶¶ 12, 13, 16.) The parties also dispute whether Plaintiff in fact ordered medical orthopedic shoes, or instead ordered work boots. (*See* Decl. of R. Childress, Doc. No. 35-10, ¶¶ 4, 8-9.) Although the Court does not find these disputed facts to be material to the resolution of this motion, the Court will accept Plaintiff's version of events as true for purposes of making these findings and recommendations.

7

failure to accommodate Plaintiff with orthopedic shoes and custom fitted orthotic inserts to fit new shoes. (Pl.'s Decl. ¶ 20.)

On December 23, 2013, Dr. Kim saw Plaintiff, noted Plaintiff's flat feet, and changed the chrono to approve insoles, but not orthopedic shoes. (Feinberg Decl. ¶ 37.) Plaintiff received this chrono on December 26, 2013. (Pl.'s Decl. ¶ 25.)

On February 14, 2014, Plaintiff was seen by Defendant Sisodia for his request for orthopedic shoes. (Feinberg Decl. ¶ 38; Pl.'s Decl. ¶ 27.) Defendant Sisodia noted that Plaintiff's chief complaint was foot pain, and that he already had a chrono for foot arch supports. (Feinberg Decl. ¶ 38 & Ex. KK.) Plaintiff declares that he brought the orthotic inserts with him to the medical interview, made Defendant Sisodia aware of the worn-out condition of his shoes, and presented to her prior chronos for orthopedic shoes. (Pl.'s Decl. ¶ 27.) Defendant Sisodia examined Plaintiff and noted no significant foot deformity, hammertoes, bunions or history of diabetes, which are indications for orthopedic shoes. (Feinberg Decl. ¶ 38 & Ex. KK.) Defendant Sisodia found no indication for the orthopedic shoes and advised Plaintiff to use arch supports for his flat feet. (*Id*.) Defendant Sisodia also wrote that Plaintiff became very angry, asked for Defendant Sisodia's name for a CDC 602, and left. (*Id*.) Defendant Sisodia's refusal to generate a chrono for orthopedic shoes is the basis for his claim against this defendant.

According to Plaintiff, on February 22, 2014, he was informed by a correctional sergeant that the shoes he ordered were not medically authorized due to the lack of a chrono for orthopedic shoes. (Pl.'s Decl. ¶ 29.) On March 10, 2014, Plaintiff filed a CDCR 602 objecting to Defendant Sisodia's medical examination of him on February 14, 2014 and her failure to accommodate him by providing a chrono to allow him to replace his worn-out orthopedic shoes. (*Id*.)

On March 21, 2014, Defendant Sisodia again saw Plaintiff. (Feinberg Decl. ¶ 39; Pl.'s Decl. ¶ 33.) Defendant Sisodia again denied Plaintiff's request for a chrono for orthopedic shoes. (*Id*.) The same occurred when Defendant Sisodia again saw Plaintiff on June 26, 2014. (*Id*.)

Seven months later, on February 4, 2015, Dr. Beregovskaya saw Plaintiff, noted bilateral hammer toes, flat feet, and that Plaintiff had customized shoes that were worn out. Dr. Beregovskaya referred Plaintiff to the orthotics clinic. (Feinberg Decl. ¶ 45 & Ex. PP; Pl.'s Decl. ¶ 34.)

Plaintiff was seen at the orthotics clinic on April 14, 2015 and measured for orthopedic shoes. Plaintiff was issued a pair of orthopedic shoes on May 12, 2015. (Feinberg Decl. ¶ 46 & Ex. QQ; Pl.'s Decl. ¶ 35.) Later, on October 16, 2015, Plaintiff was seen by Defendant Rouch regarding his complaints of leg pain and worn out shoes, and she noted that Plaintiff was recently seen by orthotics. (Feinberg Decl. ¶ 48 & Ex. TT.) Plaintiff was again issued orthopedic shoes on November 2, 2015 and November 2, 2016. (Feinberg Decl. ¶ 48 & Exs. VV, WW.)

### 3. Analysis

Plaintiff repeatedly asserts in his opposition, and asserted in his deposition in this matter, that Defendant Rouch was deliberately indifferent to his foot pain and medical needs by rescinding his chrono for orthopedic shoes, and Defendant Sisodia was deliberately indifferent by failing to issue a chrono for orthopedic shoes. (*See* Pl.'s Opp'n, Doc. 39, at 6 (". . . Defendant Rouch's errored in her determination that Plaintiff did not meet criteria for additional refitted orthopedic shoes." (sic)); *id*. at 7 (". . . Defendant Sisodia should have regarded Plaintiff's grievance and medical necessity needs to accommodate pains and suffering Plaintiff was enduring without replacement orthopedic shoes to accommodate orthotic inserts." (sic)); Pl.'s Dep. at 23:10-13, 25:20-26:10, 30:24-31:6, 35:9-21, 37:15-38:21.) Thus, the issue here is whether there is a disputed issue of material fact that the revocation or denial of a chrono for orthopedic shoes amounted to deliberate indifference. The Court will examine the arguments for liability as to each defendant in turn.

Defendant Rouch has presented undisputed evidence that her determination to rescind Plaintiff's chrono for orthopedic shoes was based upon her medical examination of Plaintiff, and upon the institution's policy setting forth the criteria for specialized footwear. Dr. Feinberg, the Chief Medical Consultant for California Correctional Health Care Services, submitted a declaration in this case that orthopedic shoes are a type of durable medical appliance that must be authorized by medical staff, and a care provider must find that the shoes are medically necessary. (Feinberg Decl. ¶¶ 10, 40, 41, 42.) A care provider who determined that orthopedic shoes are necessary must complete a CDCR Form 7410 Comprehensive Accommodation Chrono and a corresponding CDCR Form 128-C-3 Medical Classification Chrono. (Feinberg Decl. ¶39; Declaration of P. Rouch ("Rouch Decl."), Doc. No. 35-7, ¶ 6.) A completed 7410 chrono then needed to be reviewed and approved by the Chief

Medical Executive or their designee. (Feinberg Decl. ¶ 10.) However, if a care provider determines any accommodation identified in the 7410 chrono, including those that may be noted as permanent, is no longer necessary, a provider may seek to change or rescind the accommodation. (Feinberg Decl. ¶ 10; Rouch Decl. ¶ 6.)

During the relevant time frame, Operational Procedure ("OP") No. 1071 set forth the criteria for orthopedic shoes. (Feinberg Decl. ¶¶ 41-42.) OP 1071 provided that a primary care provider could refer a patient to the orthotic clinic for orthopedic shoes if the patient had (1) ulcers secondary to peripheral vascular disease; (2) severe diabetic neuropathy; (3) shoes attached to prosthesis; (4) significant deformity of ankle or foot; or (5) limb length discrepancy. If an inmate patient did not meet any of the provided criteria, then there was no indication for orthopedic footwear. (Feinberg Decl. ¶ 42, Ex. NN.) However, orthotic inserts (arch supports) could be ordered without a referral to a specialty clinic. (Rouch Decl. ¶ 11.)

Defendant Rouch declares that she determined in her November 18, 2013 examination that although Plaintiff had flat feet, he did not have any significant deformity or swelling, and had good pulses, and normal neurological responses. Using the standard for issuance of specialized footwear discussed above, she found that Plaintiff did not meet the criteria for orthopedic shoes, and wrote a chrono to rescind the accommodation. (Rouch Decl. ¶¶ 9-11.) Dr. Feinberg found, upon reviewing Plaintiff's records, that Defendant Rouch's determination to rescind Plaintiff's chrono for orthopedic shoes was medically appropriate and within the community standard of care under the circumstances. (Feinberg Decl. ¶¶ 49-50.) As discussed at length above, it is undisputed that other care providers came to the same diagnosis of Plaintiff, and found the use of inserts alone without orthopedic shoes to be appropriate for Plaintiff's condition. Further, there is no dispute that Defendant Rouch's decision to rescind the chrono was approved by her supervisor, Dr. Beregovskaya.

Plaintiff raises no material dispute against this evidence, but argues that there is other evidence showing that Defendant Rouch erred in her medical determination, which is sufficient to show that she was deliberately indifferent by rescinding his chrono for orthopedic shoes. First, Plaintiff cites copies of patient education materials on flat feet that he has submitted with his declaration, which state that the condition is more likely to develop in people who are 40 years or older, or who have a family

10

history of flat feet. (Pl.'s Opp'n, Ex. 2, at 51.) Plaintiff opines that because these factors are relevant to his medical history, this evidence clearly shows that he had a need for orthopedic shoes. This evidence, however, only appears to be relevant as to the risk factors for developing flat feet, which as discussed above, is not in dispute in this matter. These materials do not show that Plaintiff was required or should have been treated with orthopedic shoes. Further, Plaintiff's lay opinion as a prisoner that Defendant Rouch did not provide appropriate medical care is not sufficient to show deliberate indifference. *See Snow*, 681 F.3d at 987. Thus, this evidence is not sufficient to create a triable issue of fact.

Plaintiff also argues that the fact that he had a chrono authorizing the use of orthopedic shoes, and that he had worn-out orthopedic shoes in his possession, is sufficient to show that Defendant Rouch erred by finding that he did not require a chrono to obtain replacement shoes. However, Plaintiff presents no evidence to support his contention that a chrono, once issued, cannot be rescinded or changed. And as noted above, Defendants have presented evidence that under the institutional policies in effect at the time of the events at issue, a health care provider could seek to change or rescind an accommodation for medical equipment if it was not medically indicated. The undisputed evidence is that even accommodations designated as "permanent" are subject to review and possible modification or rescission.

Although Plaintiff has presented evidence that he was at times issued a chrono for orthopedic shoes and was in possession of orthopedic shoes, he has not presented any evidence that the denial of orthopedic shoes in favor of orthopedic insoles was medically unacceptable under the circumstances. Nor has he presented evidence that Defendant Rouch chose the alternative treatment in conscious disregard of an excessive risk to Plaintiff's health. There are chronos and medical records submitted that show that Plaintiff had an accommodation for orthopedic shoes at times, but there are no medical opinions in the record finding that accommodating Plaintiff with orthopedic inserts rather than orthopedic shoes was medically unacceptable under the circumstances. There are also many medical notes in the record stating that Plaintiff wanted and demanded orthopedic shoes from various providers, and that he filed 602s or threatened lawsuits if he did not get the shoes, but Plaintiff cites to no records or opinions showing findings that he met the medical criteria for specialized footwear, and

the Court finds none. Here, a reasonable trier of fact could only conclude on the undisputed material facts here that Defendant Rouch's decision was medically appropriate under the circumstances, although a different course of treatment was available. *See Snow*, 681 F.3d at 988; *Morales Feliciano*, 13 F. Supp. 2d at 208. This is not sufficient to show deliberate indifference.

Plaintiff also disagrees with Defendant Sisodia's finding that there was no indication for orthopedic shoes for Plaintiff, and that instead he should use arch supports for his flat feet. Like Defendant Rouch, Defendant Sisodia also presents undisputed evidence that she declined to issue a chrono for orthopedic shoes to Plaintiff because she determined that her medical examination of him did not show that he met the criteria for specialized footwear. (Decl. of C. Sisodia ("Sisodia Decl."), Doc. No. 35-8, ¶¶ 5-11.) Dr. Feinberg also declares that in his medical opinion, Defendant Sisodia's decision not to reinstate Plaintiff's chrono for orthopedic shoes was medically appropriate and within the community standard of care under the circumstances. (Feinberg Decl. ¶¶ 49-50.) Also, as discussed above, it is undisputed that other care providers came to the same diagnosis as Defendant Sisodia and found the use of inserts to treat Plaintiff's condition to be appropriate.

Plaintiff does not dispute this evidence, but argues that Defendant Sisodia ignored medical files establishing his medical necessity to wear orthopedic shoes. In support, he cites his own declaration, but as discussed above, his difference of opinion is not sufficient to show deliberate indifference by a medical professional. Plaintiff also cites the fact that he was previously in possession of a chrono for orthopedic shoes, and argues that Defendant Sisodia was deliberately indifferent in "disregarding" the past chronos. As discussed above with regard to Defendant Rouch, the evidence that Plaintiff was at one time in possession of a chrono for orthopedic shoes is not sufficient to show that the denial of orthopedic shoes in favor of orthopedic insoles was medically unacceptable under the circumstances. Nor has Plaintiff shown that Defendant Sisodia chose the alternative treatment in conscious disregard of an excessive risk to Plaintiff's health. Plaintiff has only shown at most that medical providers selected different treatment options for him, which is not sufficient to show deliberate indifference by Defendant Sisodia.

Finally, Plaintiff cites Dr. Feinberg's declaration discussing that Plaintiff's medical records show that he was issued replacement orthopedic shoes in May 2015, in November 2015 and in

November 2016, and argues that this shows Defendant Sisodia was deliberately indifferent in denying his request for a chrono for orthopedic shoes in 2014. At with his evidence of past chronos and shoe possession, Plaintiff's evidence that he was accommodated with a chrono for orthopedic shoes and replacement shoes may show a difference of opinion as to his medical treatment made by different doctors at different times, but is not sufficient to show that Defendant Sisodia was deliberately indifferent. *See Sanchez*, 891 F.2d at 242 (difference of medical opinion regarding treatment does not amount to deliberate indifference). Also, as noted above, Dr. Feinberg's opinion of the medical evidence, including these records, is that Defendant Sisodia's decision not to renew the chrono for orthopedic shoes was medically acceptable and within the standard of care.

Based on the foregoing, the Court finds that there is no triable issue of fact regarding whether Defendants were deliberately indifferent to Plaintiff's serious medical needs by rescinding or denying him a chrono for orthopedic shoes. Given this finding, the Court finds that it is not necessary to reach the parties' arguments regarding qualified immunity. Therefore, summary judgment should be granted in favor of Defendants.

### III. Conclusion and Recommendations

For the reasons explained above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (Doc. No. 35), be granted; and
2. Judgment be entered in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///
///
///
///

13

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 6, 2018**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE